Judgment reversed, and a <em>venire de novo</em> awarded.

# Cressman's Appeal.

*Voluntary Agreement as to Declaration of Trust not revocable on account of Minority or Disability of some of the cestuis que trust who joined in the Instrument.*

A son having made a parol division of his property, which was personal, among his brothers and sisters, except a small part which was to go to his mother, then a widow, died intestate and without issue: the mother, though entitled to the whole, signed articles of agreement with the children relative to the disposition of his estate, by which the balance remaining after taking out her portion, was to be invested, the interest to be used for the benefit of an invalid son, and the principal at his death to go to the brothers and sisters of the intestate: she also waived administration, and agreed that letters should be granted to a son-in-law, which was done. After account filed, the administrator took the net estate as appropriated by the mother, invested it, and paid her the interest for several years, for the use of her son, as agreed on, when an auditor was appointed at the instance of the mother to distribute the fund, before whom she claimed the whole balance, as mother and heir at law, repudiating her agreement, on the ground that some of her children were minors when they executed it with her: *Held,*

1. That the instrument executed by her, must be regarded as an assignment and declaration of trust, with a trustee competent to carry all its trusts into complete effect, without the aid of a court of equity.

2. That as such declaration of trust, it was her own voluntary act, deriving no aid from its execution by her children, and therefore not impaired, because at the time of the execution, some were minors: consequently the fund must be distributed on the basis of the agreement or declaration of trust.

APPEAL from the Orphans' Court of *Montgomery county.*

This was an appeal by Elizabeth Cressman from the decree of the Orphans' Court on the report of the auditor appointed to distribute the balance in the hands of William M. Lukens, administrator of the estate of Levi J. Cressman, deceased.

The case was this:—Levi J. Cressman, son of the appellant, died in the month of August, A. D. 1854, leaving surviving him, his mother, who was a widow, and several brothers and sisters, most of them minors. Letters of administration on his estate were granted to William ·M. Lukens, who, on the 29th day of September, A. D. 1855, filed an account in the register's office in

said county of Montgomery, exhibiting a balance in his hands due the estate of $428.64. On the 27th of February, A. D. 1860, upon the petition of Elizabeth Cressman, this appellant, the surviving parent of said decedent, the court below appointed an auditor to make distribution of this fund. On the 23d of May, A. D. 1860, the auditor filed his report, distributing the whole fund, less the expense of the audit, to said Elizabeth Cressman. The right of Mrs. Cressman to the fund was contested solely on the ground of the following agreement, made between herself, her children, and Lukens, the administrator:—

"Articles of agreement made and concluded this nineteenth day of tenth month, A. D. one thousand eight hundred and fifty-four, between Elizabeth Cressman, of Springfield township, Montgomery county, in Pennsylvania, widow of Samuel Cressman, late of the same place, deceased, of the first part, Elizabeth Highley, Caroline Lukens, George Cressman, Jacob Cressman, Lewis Cressman, Anne Cressman, and Cordelia Cressman, children of the said Samuel Cressman, deceased, and of the above-named Elizabeth Cressman, of the second part, and William M. Lukens, of the township of Whitemarsh, in the county of Montgomery aforesaid, of the third part:—Whereas, Levi Cressman, son of the said Samuel and Elizabeth Cressman, and brother of the several persons named as the party to the second part, was lately badly hurt by the accidental discharge of his gun, and being so hurt, directed that his estate should be divided between his brothers and sisters, excepting fifty dollars thereof, which was in the hands of his mother, which fifty dollars he directed that his mother should retain, and after giving such direction he soon after died, but the necessary steps and proceedings to render the directions valid as a nuncupative will have not been taken, and it is possible would not have been sufficient, and if intestate, the mother, it is believed, is the legal heir to his estate, which was wholly personal; and whereas, Lewis Cressman son of said Elizabeth, and one of the persons named in the party of the second part, is infirm of body, and has hardly sufficient income for his support, and has hitherto resided with his mother; now, the agreement of the parties is as follows, viz.:—The party of the first part and the party of the second part, hereby agree to renounce their rights to the administration of the estate of the said Levi Cressman, deceased, so as to permit the said William M. Lukens, the party of the third part, to obtain letters of administration of the said estate, and that the said estate shall be appropriated as follows, viz.:—The said William M. Lukens, the party of the third part, shall hold the net estate of the said deceased, after paying the fifty dollars to Elizabeth Cressman thereout, as trustee, during the lifetime of the said Lewis Cressman; placing the remainder at interest on good security

and paying the interest arising thereon annually, for the benefit of the said Lewis Cressman; that is, during the lifetime of his mother; said interest to be paid to her in part payment for her keeping of him, and after her decease, or when he shall cease to reside with her, then said interest to be paid to him, the said Lewis Cressman, during the remaining term of his natural life, and after his decease, the principal sum of said net estate, after deducting said fifty dollars, to be equally divided among the brothers and sisters of the said Lewis Cressman, in equal parts to each, his or her executors or administrators, the said William M. Lukens, party of the third part, to have beside the fees or commissions to which he may become entitled to as administrator of said estate, five per cent. on the interest so collected and paid over; and William M. Lukens, the said party of the third part, on his part doth hereby agree to administer the said estate if letters of administration thereon shall be granted unto him, and that he will make settlement of said estate within twelve months after said letters shall have been granted, and that then thereafter he will, as trustee as above mentioned, place at interest the net estate of said deceased, the said fifty dollars excepted, upon good security, and annually pay over the said interest for the benefit of the said Lewis Cressman, in manner above mentioned, viz.:—to the said Elizabeth Cressman, so long as she shall live, and her said son shall live with her, in part payment for her keeping of him, and after her decease or when he shall cease to reside with her, then that he will thereafter pay the said interest annually unto the said Lewis Cressman during his natural life, deducting five per cent. of said interest for his trouble of collecting and paying over the same, and that after the decease of the said Lewis Cressman, that he will pay over the said principal sum of said net estate unto the said Elizabeth Highley, Caroline Lukens, George Cressman, Jacob Cressman, Anne Cressman and Cordelia Cressman, in equal parts to each, or to his or her executors or administrators (the said fifty dollars originally or at the commencement being paid thereout, to be deducted from the said principal net estate as aforesaid), and it is agreed that if any part of said estate shall be at interest during the year allowed for settlement of the estate, the said interest shall be paid to the said Elizabeth Cressman, in part payment of behalf of said Lewis Cressman.

"In witness whereof the said parties to these presents have hereunto interchangeably set their hands and seals the day and year first above written."

The auditor decided that the agreement was invalid, on the ground that some of the parties to it were minors at the time they executed it, that one of them was a married woman, whose husband did not join in the agreement, and that another was the

wife of Lukens, the administrator, and that Lewis, after he came of age, by a written paper, had repudiated it; that as the agreement did not bind all it bound none, and was entirely without consideration. He accordingly distributed the whole of the fund, less the expenses of the audit, to Elizabeth Cressman, with interest from April 1st 1860, as above stated.

To this report the following exceptions were filed by the accountant June 2d 1860:—1. The auditor erred in distributing the entire balance of the estate, after payment of the expenses of audit, to Elizabeth Cressman.

2. The auditor erred in repudiating the agreement of Oct. 19th 1854, and in not distributing the estate in conformity thereto.

3. The auditor erred in not allowing the accountant his claim for commissions.

4. The auditor erred in disallowing the accountant's claim for counsel fee.

5. The auditor erred in disallowing accountant's claim for the costs of his witnesses at the audit.

On hearing, the court below recommitted the report to the auditor, with instructions to allow accountant costs for his witnesses' services and mileage, and distribute the balance on the basis of the agreement of Oct. 19th 1854, except so much as would be equal to the share of Lewis Cressman under said agreement, which share was awarded to his mother.

On the 17th of December 1860, an amended report was filed by the auditor, in which, after deducting expenses of audit, distribution was made as follows:—

"Which said balance of $385.14 your auditor decrees to be paid into the hands of the said administrator, to be invested on good security during the lifetime of the said Lewis Cressman, he, the said administrator, paying the interest thereon annually to the said Elizabeth Cressman, less 5 per cent., which he is to retain for his trouble in collecting and paying over the same. And that after the decease of the said Lewis, he, the said administrator, to pay over the said $385.14 unto Elizabeth Highley, Caroline Lukens, George Cressman, Jacob Cressman, Ann Cressman, and Cordelia Cressman (brothers and sisters of said decedent), in equal parts to each, or to his or her executors or administrators."

To this report the appellant filed the following exceptions, December 22d 1860:—

1. The auditor erred in not making the distribution in conformity with the instructions of the court.

2. The auditor erred in not awarding to Elizabeth Cressman the amount directed to be awarded to her by the court.

These exceptions to the final report of the auditor, were thus disposed of by the court:—

[Cressman's Appeal.]

"Now, to wit, January 14th 1861, upon submission of the exceptions to the amended report of the auditor, the court sustain the exceptions, and modify the distribution stated by the auditor as follows :—

"Out of the balance of $385.14, left after payment of expenses as stated by the auditor, the sum of $55.02 is distributed to Elizabeth Cressman, in her capacity as heir at law of Lewis Cressman, deceased; and the remainder of said balance of $385.14, being the sum of $330.12, is directed to be invested, and afterwards divided (subject to commissions on interest) as directed by the auditor with reference to said balance of $385.14."

The case was thereupon removed into this court by Mrs. Cressman, who averred that the court below erred in regarding the agreement as valid, and in not awarding to her the whole fund.

The errors assigned were:—1. That the exceptions of June 2d should have been dismissed.

2. That the court erred in not decreeing the whole fund, less costs of audit, to Elizabeth Cressman.

*G. R. Fox* and *George N. Corson*, for appellant, argued:—
I. That the exceptions of June 2d 1860 were filed more than ten days after the filing of the report, and were not warranted by the rule of the court on that subject: citing, as the rule for computing time, Thomas *v.* Afflick, 4 Harris 14; Barker *v.* Chandler, 5 Id. 48.

II. That the agreement October 19th 1854, was invalid, because,

1. It wanted the essential ingredient of parties able to contract and to be contracted with. It did not bind Lukens's wife at all, and certainly did not absolutely bind the minors: Hill *v.* Roderick, 4 W. & S. 223. Lewis actually did repudiate it, and the rest could not be held to it. If the minors had the power to gainsay it, Mrs. Cressman had the same power. The married woman, the wife of the trustee, could make no such bargain with her husband. As to her, the instrument was simply void, and being void as to her, it was void as to all. So the act of the other *feme covert*, Mrs. Highley, was absolutely void. Her husband did not join, his consent is in no way shown, and the act was therefore a nullity.

2. It was without consideration. The auditor has expressly found this fact. It was incorrectly assumed by the judge that the retaining by Mrs. Cressman of the $50 she owed the decedent, formed a consideration. But if she had retained her right to administer and to take under the intestate law, her right to keep that money could not have been doubted. It is only on the supposition that a nuncupative will might have been proved, that the slightest spark of consideration moving to Mrs. Cressman can be proved. What is set forth in the agreement is very

meagre, but induces the belief that probate could not have been made: Haus *v.* Palmer, 9 Harris 296. The finding of the auditor conclusively settles that there was no real consideration. In the face of that finding, and of the plain facts of the case, the seal was not of the slightest consequence. But no court would permit Mrs. Cressman to be bound by such an agreement, made with her children and her son-in-law, unless satisfied by positive testimony, that she was fully informed of her rights; that there was reasonable ground to believe that the will could be established; and that she acted with her eyes open: Anderson's Appeal, 12 Casey 476.

3. It was against the policy of the law, and therefore void: Bowers *v.* Bowers, 2 Casey 74; Clippinger *v.* Hepbaugh, 5 W. & S. 315; Filson *v.* Himes, 5 Barr 456. Part of the so called consideration was the sale by Mrs. Cressman to Lukens of her right to administer. No price is fixed, and it is impossible to separate that from the value of the other interests given up by Mrs. Cressman.

*B. M. Boyer*, for appellees.—1. The court below entertained and heard the exceptions as in time, and they had the discretionary right to do so, even if the exceptions had not been filed within the time prescribed by the rule. Nothing having been done upon the faith of any final confirmation of the auditor's report, it was discretionary with the court to have allowed the exceptions to be filed *nunc pro tunc*: Daily *v.* Green, 3 Harris 128. The confirmation of the auditor's report, under the rules in the absence of exceptions, was, at most, a decree of the court. And it is well settled that the Orphans' Court may, to prevent injustice, if it chooses, rehear, modify, revoke, and annul its own decrees before they have been executed, and, in some instances, even after they have been acted upon: George's Appeal, 2 Jones 262. But the exceptions were in time. The narrow distinction between the reference to the *act* done and the *day* upon which it is done, has not yet become the law of this state: Sims *v.* Hampton, 1 S. & R. 411; Goswiler's Appeal, 3 Penna. Rep. 200; Harker, *v.* Addis, 4 Barr 516. Although in Thomas *v.* Afflick, 4 Harris 14, in a *per curiam* opinion, Goswiler's Appeal is doubted, it is again expressly referred to and quoted as authority, in Barber *v.* Chandler, 5 Harris 50, as is also the case of Sims *v.* Hampton, 1 S. & R. 411.

2. The agreement of October 19th 1854 was valid. There are two aspects in which the instrument may be viewed—either as a contract or as a deed of gift from the appellant to her children. In either case she is not in a position to annul it.

3. It was not without consideration. The preamble to the instrument itself very fully sets forth the motives and objects of the act. The instrument was not void, because some of the

parties were minors at the time, but only *voidable ;* and not so by an adult party against their desire, and in opposition to their interests. Hill *v.* Roderick, 4 W. & S. 223, cited by appellant, is open to the objection that it came a second time before the Supreme Court for adjudication, and was then decided the other way. See 7 Barr 95; Brown *v.* Caldwell, 10 S. & R. 114; McGwin *v.* Shaeffer, 7 Watts 412; 2 Kent's Com. 234, 235, 236, 237, 238. Lewis's repudiation amounted to no more than a release and surrender to his mother of his rights and interests under the same, and to that extent she profits by it, but is not prejudiced in the slightest particular. With respect to the married women, who were parties to the instrument, the reply is the same. Their acts were voidable only, not void. Their husbands have never objected: Reakert *v.* Sanford, 5 W. & S. 168; Leeds *v.* Vail, 3 Harris 187; Heilman *v.* Bouslaugh, 1 Harris 355. The husband may repudiate the contract of the wife, or the wife plead her coverture. Until then all other parties are bound.

4. The instrument created an executed trust. This is the conclusive answer to the appellant's case. It sets aside all questions arising from the infancy or coverture of the beneficiaries, and renders the question of consideration equally immaterial. If there was no consideration for her act, then her children are volunteers; but she having created in their favour an executed, and therefore an *irrevocable* trust, it will be enforced by equity in their favour against her. The signatures of the children and *feme coverts* are to be regarded as the mere evidence of their consent to *receive ;* for, upon the appellant's own showing, they had nothing to *give* in return. Everything connected with the trust is complete. The trustee has acted in the premises, and has accounted for, invested, and paid over the moneys. The appellant acquiesced for years, and during five years received and receipted to the trustee, for moneys paid to her in conformity with the objects and provisions of the trust. It would be against all the authorities now to allow her to revoke the trust. See Dennison *v.* Goehring, 7 Barr 175; Ellison *v.* Ellison, 6 Vesey *656 ;* 1 Lead. Ca. in Eq. 219 to 246; Hill on Trustees, 2 Am. ed. 114 to 122; Bunn *v.* Winthrop *et al.*, 1 Johns. Ch. Rep. 329.

5. As respects the presumption of ignorance, Anderson's Appeal, 12 Casey 476, cited by appellant, is no authority, that being a question of *implied waiver* of a widow's right of dower, and not a case of express grant. But the instrument, which she seeks to repudiate, with great clearness and particularity describes all her rights.

6. As to its being in violation of *public policy,* the case of Bowers *v.* Bowers, 2 Casey 74, has no analogy to this. The arrangement was one favoured by considerations of public policy,

whether we view it as a distribution of a decedent's estate, substantially in compliance with an informal last will, or a family settlement which provided for the wants of the weakest and most dependent member, or as an ordinary settlement for the maintenance and benefit of children. In either or any aspect, however, it is a trust executed, and as such is beyond recall.

The opinion of the court was delivered, March 10th 1862, by READ, J.—The doctrine applicable to this case was discussed in In Re Painter's Estate, 16 Leg. Int. 76, and to the cases there cited may be added Scales *v.* Maude, 25 Law J. R., N. J. (Chanc.) 433, decided by Lord Chancellor Cranworth, who had joined in the judgment in Kekewich *v.* Manning, 12 Eng. L. & Eq. Rep. 120, as one of the lords justices. There letters by a mortgagee to defendants, beneficially interested in the equity of redemption, promising that her executors should cancel the mortgage, and containing words of gift, were held upon appeal, affirming the decision below, to be no defence to a suit of foreclosure by the executors of the mortgagee. "In order to sustain the case of the defendants, they must make out that this is a valid declaration of trust. I do not think it is a declaration of trust at all, and if it were a declaration of trust it would be invalid, as being voluntary. It is not a declaration of trust at all, but it was intended merely to be a direction to the executors. Although she speaks of a gift, there is no gift at all, except a direction to the executors, and that is obviously revocable." "Even if it were a declaration of trust, it would be invalid for want of consideration, for a mere declaration of trust by the owner of property in favour of a volunteer is altogether inoperative, and the court will not interfere in such case. The case is different where there has been a change of legal ownership, and so a trust has been constituted. Then the court will inquire what the trusts are, but there is no authority in favour of what the defendants are contending for." Kekewich *v.* Manning, referred to by the lord chancellor, was a marriage settlement, where the settlor had by deed conveyed and assigned her interest, which was all she could do, in a fund to new trustees upon trusts which eventually gave the property to volunteers.

The language of the lord chancellor is too strong, and cannot be considered as a perfectly correct exposition of the law. In Lambe *v.* Orton, decided by Vice-Chancellor Kindersley, on 26th January 1860 (1 Drew & Sm. 125; 29 L. J. Ch. 319; 1 Law Reporter 394), where a letter was written by a nephew to his uncle, who was the executor and trustee of another uncle's will, the first part requesting him to pay to his cousin one third part of the portion of the personal property to which he was entitled from his late uncle's effects, and the second part requesting him

to pay the remaining two-thirds of the personal effects due to him from his late uncle to his uncle George, and to the uncle to whom it was addressed, it was held that the letter was a valid declaration of trust, and assignment of all his interest, immediate and expectant, under his uncle's will to the parties named in the letter.

Mr. Spence, in his very elaborate work on the Equitable Jurisdiction of the Court of Chancery, vol. 2, p. 909, sums up the doctrine, after discussing all the cases prior to 1849, in these words: "On the whole, it appears that the only sure way short of a legal transfer, where that is practicable, of effecting a voluntary transfer to a stranger, is by the party entitled signing a declaration (a deed does not appear to be necessary), declaring a trust in favour of the intended donee." And the same doctrine is stated as the law by Mr. Smith, in the 6th edition of his Manual of Equity Jurisprudence, published during the last year, and which is highly spoken of in England.. The American authorities are collected in the notes of Hare and Wallace to the cases of Ellison v. Ellison, 1 White & Tudor's Leading Cases in Equity (ed. 1859), p. 324, and take the same ground, with a leaning in favour of a wife and child, as forming a meritorious consideration: Dennison v. Goehring, 7 Barr 175; 1 Story Eq., § 170; 2 Id., § 973.

Mrs. Elizabeth Cressman had been twice married, and had children by both husbands. Levi Cressman, a son of the second marriage, died from the effects of an accident whilst out gunning, and before his death directed or desired that his estate, which was personal, and not exceeding $500, should be divided amongst his brothers and sisters, excepting $50 of it, which was in the hands of his mother, and which he directed his mother should retain. He died intestate, unmarried, and without issue, and his mother was of course entitled to the whole of his little property, and to the administration. Under the circumstances the mother, desirous of carrying out the will of her son, executed on the 19th Oct. 1854, what is styled articles of agreement under seal, the paper not being drawn by counsel, but by a friend of the family. As Mrs. Cressman was the entire owner of the personal estate of her son, and as many of her children were minors or married women, this paper can only be regarded as her own voluntary act, deriving no aid from its execution also by her children. By this deed she waives her right to administration, and agrees that her son-in-law, William M. Lukens, shall take out letters of administration, which was done. The said Lukens is to hold the net estate of the deceased, after paying the $50 thereout to Mrs. Cressman, placing the remainder at interest on good security, paying the interest arising thereon annually, for the benefit of Lewis Cressman, an infirm son; that is, during the lifetime of his mother,

said interest to be paid to her in part payment for her keeping of him, and after her decease, or when he shall cease to reside with her, then the said interest to be paid to him, the said Lewis Cressman, during the remaining term of his natural life, and after his decease the principal sum of said estate to be equally divided among the brothers and sisters of the said Lewis Cressman. William M. Lukens, as administrator, filed his account on the 29th September 1855, which was confirmed *nisi* on the 14th November in the same year—and then as trustee, according to the deed, took the net estate as appropriated by Mrs. Cressman, and, as we suppose, placed it at interest on good security, and regularly paid over the interest to Mrs. Cressman, for the benefit of her son Lewis, up to 1860, inclusive. On the 27th Februay 1860, on petition of Mrs. Cressman, the court appointed an auditor to make distribution of the funds. The auditor disregarded the agreement, and gave the funds to Mrs. Cressman. The court reversed the report of the auditor, established the agreement, and made a decree in favour of the persons entitled under it.

After considerable hesitation, we cannot regard this instrument in any other light than an assignment and declaration of trust, with a trustee competent to carry all its trusts into complete effect, without the aid of a court of equity. The fund has been in the hands of the trustee for upwards of seven years, for nearly the whole of which time all parties seemed contented with the arrangement, and its provisions were entirely fulfilled. The court below were therefore right, but we do not commit ourselves to all the reasons assigned by them. As the trust may last for some time, the court should see that the money is properly invested, and if necessary, that the trustee should give security.

Decree affirmed, at the costs of the appellant.(*a*)

(*a*) In In Re PAINTER's ESTATE, which was an appeal from the decree of the Orphans' Court of *Westmoreland county*, the following opinion was delivered by

READ, J.—Jacob Painter died in November 1855, intestate, unmarried, and without issue, leaving a mother, Susannah Painter, and nine brothers and sisters, of whom five or six were minors at the time of his death. By the law of Pennsylvania the personal estate of the decedent vested in his mother absolutely, who was also entitled to letters of administration upon the estate of her son.

By the consent of the mother, letters of administration were granted to George Mechling, and on the 31st December 1855, an agreement was entered into between the administrator and the mother, which is the subject of the present contention.

This agreement is in these words: " Whereas, Jacob Painter, Esq., late of Hempfield township, Westmoreland county, Pennsylvania, departed this life leaving no issue, but a mother, sisters, and brothers living. The said Jacob Painter left a considerable personal estate at his death, which by the laws of Pennsylvania would descend and come to his mother, Susannah Painter

[Cressman's Appeal.]

(widow), and whereas by consent of said Susannah Painter, George Mechling, of Hempfield township, lately took out letters of administration on the estate of Jacob Painter, deceased, whereby the personal assets of said deceased are now in the hands of said G. Mechling, administrator. And now this agreement witnesseth, that the said Susannah Painter (widow) has this day agreed and doth hereby agree with the said George Mechling, administrator as aforesaid, that he proceed as soon as convenient, and purchase three sets of marble gravestones, with proper inscriptions thereon, and have them properly set to the graves of her deceased husband, John Painter, and her sons Jacob and Christopher; and whatever the expenses may be for them and in erecting the same, the said Susannah agreeing that the said administrator shall pay the said expense out of said estate; and the said Susannah Painter hereby further agreeth with the said G. Mechling, administrator as aforesaid, that he the said administrator paying her in addition to the above expenses—when the estate is finally settled up, if there be that sum left, after all expenses in settling—the sum of three hundred dollars, for which sum, paid her at the time aforesaid, if proper assets left. I now hereby covenant and agree by these presents, to release, acquit, and for ever discharge the said administrator, his heirs, executors, and administrators, of and from the said Jacob Painter's estate, of all accounts, reckonings, claims, and demands whatever, for or by reason thereof. And further, I hereby agree with the said administrator, after said sum of $300 paid to her, and assets left, I hereby agree and direct the said G. Mechling, administrator aforesaid, to pay the same over to the brothers and sisters then living, share and share alike, of the said Jacob Painter, deceased, &c., and for the true performance of all and every the covenants and agreements aforesaid, each of the said parties bindeth themselves, their heirs, executors, and administrators, and every of them, by these presents. In witness whereof, the said parties to these presents have hereunto set their hands and seals this 31st day of December, A. D. 1855.

SUSANNAH PAINTER.   [L. S.]<br>GEORGE MECHLING.   [L. S.]

"Sealed and delivered in the presence of
            HARRIET POTTER."

Mrs. Painter married John Myers, and gave the administrator two receipts for money on account of this agreement, the first dated 22d February 1856, for $50, and the second on the 2d April 1856, in these words:—

"In pursuance of an agreement in writing, made the 31st day of December 1855, with George Mechling, administrator of my son Jacob Painter, deceased, I hereby acknowledge to have received from the said administrator, on the said agreement, the sum of fifty dollars, including all the personal property which was of said deceased (excepting the gold watch), which is in part of the moneys payable me, by said agreement with the administrator, when the estate is settled up, &c.          SUSANNAH PAINTER.

"Witness,      ANNA MARIA PAINTER."

Some time after this receipt, Mrs. Myers gave the administrator, Mechling, notice not to pay over any portion of the estate in his hands to her children according to the agreement of the 31st December 1855, and that she revoked the same.

The administrator settled his account to November Term 1856, and by the auditor's report it appears that there was in the administrator's hands the sum of $2479.55, which, after deducting the expenses, left a clear balance of $2147.05 in addition to the $200 paid on account to Mrs. Myers.

The Orphans' Court reversed the report of the auditor, giving the cash balance to George Mechling, Esq., in trust for the brothers and sisters of the said Jacob Painter, deceased, and ordered the same to be paid to Mrs. Myers, from which decree the administrator or trustee appealed to this court.

It appears, therefore, that on the 31st December 1855, the clear personal estate to which the mother was entitled amounted to $2347.05, and that she

was ignorant of its value, for the agreement carefully provides that the sum of $300 is only to be paid her, if there be that sum left, and the administrator ran no risk, for all that he agreed to do was to pay her with her own money if that money held out. The result was, that if, after the estate was finally settled up, he paid her *then* $300 (if proper assets left) of her own property, she was to release him from all claims and demands on account of an estate the whole of which belonged to her.

In the same ignorance of the true amount of her estate she says, "I hereby agree with the said administrator, after said sum of $300 paid to her, any assets left, I hereby agree and direct the said G. Mechling, administrator aforesaid, to pay the same over to the brothers and sisters *then* living, share and share alike, of the said Jacob Painter, deceased, &c."

It is clear, then, from the face of this paper, which is the only ground-work of the claim of the appellant, that the appellee was ignorant of the amount of the property vested in her by the death of her son. The administrator did not profess to know, and his account was not filed for nearly eleven months afterwards—when, therefore, she prospectively agreed to release the administrator, and directed him to pay over, at a distant period, to the brothers and sisters then living of her son, any assets left; she did so in ignorance of the most material fact—the value of the personal estate which was thus the subject of future disposition.

Such an arrangement, between a trustee and *cestui que trust*, could not be sustained for a moment, and its invalidity vitally affects the voluntary direction to pay to the brothers and sisters of her son, given in palpable ignorance of the extent and value of her interest in the estate of the decedent.

The cases cited by the counsel for the appellant were correctly ruled by this court, but we do not think them applicable to the present case. In Delamater's Estate, 1 Whart. 362, the executed transfer was an irrevocable gift of the stock, and as no fraud was proved, the court refused to cancel the assignment and transfer. In In re Campbell's Estate, 7 Barr 100, Gibson, C. J., said, "the notes in question could have been discharged only by a sealed release, or a parol gift of them; the disposition of them insisted on by the accountant was neither. *A gift is a contract executed,* and as the act of execution is delivery of possession, it is of the essence of the title." In Yard *v.* Patton, 1 Harris 278, there was a consideration to support the agreement, which the court refused to cancel, the parties perfectly understanding what they were doing, and acting free of any influence springing from falsehood, fraud, or misapprehension.

The words in this paper are simply a direction to pay at a future period, an indefinite amount, which may or may not exist. It is executory only, and without consideration. It is not an assignment, nor is it in terms or in spirit a declaration of trust, and yet the court is called upon to enforce it, although the appellant professes to desire to be left to the common law.

The mother is by law entitled to the personal estate of her son absolutely, but to her legal claim the appellant interposes, not an assignment or transfer of it, but a voluntary executory paper, without consideration. This is a matter of equitable consideration entirely, and is cognisable in the Orphans' Court, which is a court of equity. The appellant must make out his equitable right to this money in opposition to the legal claim of the mother, and in this we have already said he has not succeeded.

We are aware that voluntary trusts of personalty have of late years found much favour in the English Court of Chancery, and that a series of cases beginning in 1851, have established there that a valid trust "arose where there was a complete indication of a definite intention to part with property in favour of another person, it being quite immaterial whether that other person was a volunteer or took for valuable consideration, and also whether the intention of the settlor was communicated to the *cestui que trust* or not:" Forbes *v.* Forbes, 30 Law Times Rep. 176 (Vice-Chancellor Wood, November 17th

1857). See also Moore *v.* Darton, 7 Eng. L. & Eq. 134; Kekewich *v.* Manning, 12 Id. 120; Gray *v.* Gray, 13 Id. 154; Paterson *v.* Murphy, 17 Id. 287; Voyle *v.* Hughes, 23 Id. 271.

But this must be taken with the pertinent qualification stated by Lord Justice Knight Bruce in Kekewich *v.* Manning, 12 Eng. L. & Eq. 126: "For as upon the one hand," says the Lord Justice, "it is on legal and equitable principles, we apprehend, clear that a person *sui juris*, acting *freely, fairly*, and *with sufficient knowledge*, ought to have, and has it, in his power to make in a binding and effectual manner a voluntary gift of any part of his property, whether capable or incapable of manual delivery, whether in possession or reversionary, and howsoever circumstanced; so on the other hand it is as clear, generally if not universally, that a gratuitously expressed intention, a promise merely voluntary, or, to use a familiar phrase, *nudum pactum*, does not (the matter resting there) bind legally or equitably."

Under any aspect of the present case we do not think that Mrs. Myers made a valid and binding transfer to, or a valid and binding declaration of trust, in favour of the brothers and sisters of her deceased son, and of course the decree of the Orphans' Court must be affirmed.