## Jones *v.* Keesey, Appellant.

*Attachment execution—Trusts and trustees—Assignment.*

Where a purchaser of a business agrees to pay the debts of the prior owner of the business, and subsequently executes a power of attorney, and addresses a letter of instructions to a firm of real estate brokers, authorizing the brokers to sell certain lands which were his private lands apart from the business, and to apply the proceeds thereof to the payment of the debts which he had assumed, no trust in the proceeds is created by the transaction in favor of the creditors, and the brokers cannot retain the proceeds when they are summoned as garnishees in an attachment execution issued under a judgment against the purchaser.

Argued Dec. 17, 1909.   Appeal, No. 257, Oct. T., 1909, by defendants, from order of C. P. No. 1, Phila. Co., Dec. T., 1907, No. 5,235, making absolute rule for judgment against garnishees in case of Saunders I. Jones and Lawrence Jones, copartners, trading as Paul Jones & Co. v. Joseph W. Keesey, defendant, and Schalcher & Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Attachment execution.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order making absolute rule for judgment against garnishees.

*Jay Rich Grier*, with him *Harry Schalcher*, for appellants.— The facts clearly establish a trust in the appellants in the fund, for the benefit of certain assenting creditors of Ruley: Beans v. Bullitt, 57 Pa. 221; Burger v. Burger, 135 Pa. 499.

The assenting creditors, have an equitable lien, are joint owners of the fund, and are entitled to retain their lien by attachment: Stewart v. McMinn, 5 W. & S. 100.

*Alfred T. Steinmetz*, with him *George Wentworth Carr* and *Robert A. Beggs, Jr.*, for appellees.—The facts show that no

trust for the benefit of creditors was created: Beans v. Bullitt, 57 Pa. 221; Wallace v. Wainwright, 87 Pa. 263; Johnson's App., 103 Pa. 373; Chaffees v. Risk, 24 Pa. 432; Painter's Est., 42 Pa. 156.

The facts do not show that the attaching creditors are such parties to the alleged trust agreement as to estop them from issuing attachments against the fund.

OPINION BY PORTER, J., March 3, 1910:

The plaintiffs recovered a judgment in an action of assumpsit against the defendant Keesey, and an execution attachment upon that judgment was issued and served upon Schalcher & Co. as garnishees. The garnishees in answer to interrogatories admitted that there was in their hands the sum of $1,393.05, realized from the sale of a lot of ground belonging to the defendant Keesey, after deducting all charges for their services as his agents in the matter. The answer stated that the property was sold by the garnishees under a power of attorney executed by Keesey, authorizing the garnishees to act as his attorneys in fact in that behalf, and set forth at length the circumstances under which the power of attorney was executed and certain contracts executed by Keesey. The answer averred that the garnishees were advised and believed that under the terms of the power of attorney and the circumstances under which they sold the property, the fund was "impressed with a trust, for all the creditors of Samuel W. Ruley." The court entered judgment against the garnishees on their answer, for the amount of the plaintiffs' claim, and from that judgment the garnishees appeal.

The circumstances alleged in the answer which the garnishees argue constituted this a trust fund for all the creditors of Samuel W. Ruley may be thus stated. Ruley was engaged in the saloon business and having entered into an arrangement for the sale of the business to Keesey, an application was made to the proper court for an order transferring the license, which order was made on November 29, 1907. "It was then understood, agreed to, and acted upon, both by the counsel for the creditors of said Ruley, the said court, and your

deponent individually, that upon the statements and stipulations contained in the annexed agreement attached hereto, marked exhibit 'A,' that certain debts of said Ruley, as per schedule signed by said Ruley attached hereto and marked exhibit 'B' and made part hereof, would be assumed and paid in full by the said defendant Joseph W. Keesey." The part of the answer above quoted is only material for the purpose of showing how Keesey became liable to pay the debts of Ruley, subsequently referred to in the answer. The plaintiffs in this proceeding having obtained a judgment against Keesey, it is not in the present proceeding material to inquire how the indebtedness upon which that judgment is founded arose. The part of the answer which is material to the present controversy follows. Keesey, in order to consummate his intention to pay the debts which he had thus assumed, executed a letter of attorney to these garnishees, authorizing and empowering them to sell, dispose of and convey all the real estate of which Keesey was then possessed, a copy of which power of attorney is to the answer attached and marked exhibit 'C,' which letter of attorney was executed by Keesey and his wife and duly acknowledged. Keesey and his wife, upon the same day the power of attorney was executed, signed a letter addressed to Schalcher & Co., the garnishees, directing the latter to make sale of three lots of ground therein described, upon terms therein stated, and to negotiate a second mortgage of $800, upon the fourth lot of ground therein described, a copy of which letter is attached to the answer and marked exhibit "D." This letter is nothing more than the ordinary authorization which a real estate broker receives from his customer to secure for the latter a purchaser of real estate; it did not authorize the broker to convey the land. Keesey, upon the same day, signed a letter which was addressed to Schalcher & Co., instructing the latter as follows: "From the moneys which you will derive from the sale of premises (here follow the street numbers of the houses, respectively) you will pay the indebtedness of Samuel W. Ruley in re saloon business at No. 108 North Sixth street, in the city of Philadelphia, per the schedule submitted to you by said Ruley;" with other direc-

tions which do not affect the consideration of the question presented; a copy of this letter is attached to the answer and marked exhibit "E." There is attached to exhibit "A," the agreement between Ruley and Keesey, a copy of the schedule "B" referred to in said agreement, containing a schedule of the debts of Ruley, which presumably is the schedule of such debts referred to in exhibit "E." The garnishees acting under the power of attorney, which constituted them the attorneys in fact of Keesey, sold one of the pieces of real estate and received therefor the sum of $1,831.05, from which sum the answer claims the right to deduct the sum of $438 for their expenses and commissions in the transaction, leaving a balance of $1,393.05 now in their hands. Keesey on January 13, 1908, revoked the power of attorney and declined to permit the garnishees to proceed further. Neither the power of attorney constituting the garnishees the attorneys in fact of Keesey for the sale of·the property nor any of the other papers referred to in the answer were ever recorded.

The answer does not aver any express covenant between the creditors of Ruley, or of Keesey, which constituted these garnishees the agents for such creditors, nor does it aver facts from which such a covenant could be implied. There is no allegation of an agreement of the creditors that the property which was sold or any other property of Keesey should constitute a trust fund to be applied to the extinguishment of their several debts, pro rata or otherwise. There is no averment that the creditors even knew of the execution by Keesey of the letter of attorney authorizing Schalcher & Co. to make sale of the property, or of the letter from Keesey to the garnishees to pay, as his agents, the fund realized from the sale to the creditors of Ruley. The only allegation of an agreement upon the part of the creditors is that they accepted the terms of the agreement between Ruley and Keesey, that the latter should pay the debts of the former. This agreement gave to each creditor, respectively, the right to hold Keesey for the debt formerly due from Ruley, but the property of Keesey was not thereby impressed with any trust. Each creditor acquired the right to maintain an action against Keesey and

nothing more. If, therefore, the fund in the hands of the garnishees is subject to any trust in favor of creditors generally, that trust could only have arisen out of the provisions of the letter of attorney of Keesey, which authorized the garnishees to make sale of the property, and the letter directing them to pay the proceeds of the sale to the creditors of Ruley. We may here observe that the garnishees were not creditors of either Ruley or Keesey, they had no interest in the property or the proceeds thereof, except the compensation to which they might be entitled for the execution of the power.

The exhibits "A" and "B," the agreement for the sale of the saloon property by Ruley and the acceptance thereof by Keesey, with the schedules thereto attached, are simply the ordinary agreement of sale of property subject to the payment of certain debts of the vendor, with a list of those debts. There is nothing in these agreements which renders any property subject to any trust. The property which the garnishees sold was no part of the property which passed under the sale from Ruley to Keesey, it was property which the latter had owned prior to any of the transactions with which we are now dealing. The power of attorney, exhibit "C," from Keesey and wife to the garnishees, which authorized the sale of the property, was in the form usual for the purpose contemplated; it conferred full power to sell and execute conveyances, but contained no provisions as to what should be done with the proceeds, made no mention of any right of a third party therein, and contained nothing which could give rise to a trust relation, save that between Keesey and his agents, the garnishees. The letter of instruction from Keesey to his agents, the garnishees, authorized the latter, as his agents, to pay the proceeds of the sale to the creditors of Ruley. The power of attorney did not vest the title to the real estate in the garnishees; the land until the sale and thereafter the proceeds thereof remained the property of Keesey. The letter of Keesey, exhibit "E," did not vest in the creditors of Ruley any title to the land, which was afterwards sold, nor to the proceeds after the sale. Keesey had the power to revoke this letter of instruction to his agents as to the disposition of the fund, just

as he had the power to revoke and subsequently did revoke the power of attorney which authorized the agents to make a sale. The power of attorney authorizing Schalcher & Co., as the agents of Keesey, to sell the land, taken in connection with the letter of instruction to his agents authorizing a payment of the proceeds did not constitute an assignment for the benefit of creditors, and created no trust in favor of creditors as to the fund: Beans v. Bullitt, 57 Pa. 221; Burger v. Burger, 135 Pa. 499; Wallace v. Wainwright, 87 Pa. 263; Painter's Est., 42 Pa. 156. Even if the power of attorney under which the garnishees acted and the letter, exhibit "E," authorizing them to make payment of the proceeds were held to constitute an assignment for the benefit of creditors, within the provisions of the Act of March 24, 1818, 7 Sm. L. 131, the instruments were not recorded within thirty days, and under the provisions of that statute must be held null and void, as against attaching creditors: Watson v. Bagaley, 12 Pa. 164.

The answer having admitted that the garnishees had in their hands the fund derived from the sale of the property of Keesey, the allegation of the answer that Emma C. Bergdoll, a judgment creditor of Keesey, had given notice to the garnishees that she claimed the entire balance of the fund in their hands, is insufficient to prevent judgment, as it fails to allege anything which even remotely indicates that Emma C. Bergdoll had any lien upon the fund in the hands of the appellants.

The judgment is affirmed.