# The Union Passenger Railway Company *versus* The City of Philadelphia.

1. By the charter of a railway company incorporated in 1864, the company was made subject to all ordinances of the city of Philadelphia regulating the running of passenger railway cars, and a further clause provided that the company should pay such license for cars run as was paid by the other passenger railway companies of the city. When the company was incorporated this license tax was fixed at $30 per car. An ordinance of 1867 increased this tax to $50, and the Act of April 11th 1868 enacted that the various companies should pay annually to the city $50 per car run as "required by their charters." After paying this tax until 1875, the company refused to pay the same any longer, and this suit was brought to recover it : *Held*, that the company having paid the tax of $50 without protest up to 1875, it is a legal conclusion that it accepted the Act of 1868, in order to obtain the benefit of the legislation which forbade the city from making regulations affecting it unless authorized by a law referring in express terms to these railways.

2. The terms of the charter which provided for the payment of such a license of $30 as was *then* paid by other passenger railway companies in the city do not negative all right of the Commonwealth to impose the tax of $50 contained in the Act of 1868.

3. The right of the state to impose such a tax, rate, or imposition in future cannot be taken away by a mere implication arising from a direction to pay a certain sum. To establish a relinquishment of this power the indications of such an intention must be plain, and the terms of the charter must therefore be regarded as conferring an authority only upon the city to receive and imposing an obligation upon the company to pay this sum, but not as a contract on the part of the Commonwealth for the relinquishment of her own power to impose a further burthen.

4. And if this be not so, the amendment to the Constitution of 1857 subordinated charters thereafter granted to the power to make alterations therein, provided no injustice be done the incorporators.

February 1st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county :* Of July Term 1876, No. 30.

Debt by the City of Philadelphia against the Union Passenger Railway Company, in which the following case was stated for the opinion of the court, with the right to either party to sue out a writ of error to the judgment :—

That by "An ordinance supplementary to an ordinance entitled 'An ordinance to regulate passenger railways,' approved July 7th

1857," approved April 1st 1859, and by the third section thereof it is provided:—

"That each and every passenger railway company shall pay into the office of the chief commissioner of highways, in the month of January of each year, for the use of the city, the sum of thirty dollars for each car intended to be run upon any road; and for each and every car placed upon any road before the time herein provided for paying the license, a proportionate sum shall be paid until the succeeding January, and that no car shall be placed or run upon any road or street until it shall be regularly licensed and a certificate duly numbered hung in a conspicuous place in said car."

That the defendants were created a body politic by an act passed April 8th 1864, Pamph. L. 297, with the authority to construct a railway on certain named streets in the city of Philadelphia. Among other things in said act, it is enacted:—

"Sect. 4. * * * Said railway shall conform in gauge to the passenger railways now laid in the city of Philadelphia. * * *

"Sect. 8. * * * And the said company is hereby authorized and empowered to construct and lay the said railway, without obtaining the consent of the city councils of the city of Philadelphia; but whenever the said railway shall be laid and used, by running passenger cars thereon, the said company shall be subject to the ordinances of the city of Philadelphia regulating the running of passenger railway cars.

"Sect. 10. That the said company shall pay annually into the treasury of the city of Philadelphia, for the use of said city, whenever the dividends declared by said company shall exceed six per cent. per annum, on the par value of the capital stock thereof, a tax of six per cent. on such excess over six per cent., * * * and the said company shall also pay *such license for each car run by said company, as is* NOW *paid* by other passenger railway companies in the city of Philadelphia."

By "A further supplement to an ordinance to regulate passenger railways, approved July 7th 1857," approved January 2d 1867, it is enacted:—

"That each and every passenger railway company shall pay to the chief commissioner of highways the sum of fifty dollars for each car run upon their respective roads. * * *"

That by "An Act to define the duties and liabilities of passenger railway corporations in the city of Philadelphia," approved April 11th 1868, Pamph. L. 849, it is enacted: "That the several passenger railway corporations in the city of Philadelphia shall pay annually to the said city, in the month of January, the sum of fifty dollars, as required by their charters, for each car intended to be run over their roads during the year, and they shall not be obliged to pay any larger sum; and said city shall have no power, by ordinance or otherwise, to regulate passenger railway compa-

[Union Passenger Railway Co. v. City of Philadelphia.]

nies, unless authorized so to do by the laws of this Commonwealth, expressly in terms relating to passenger railway corporations in the city of Philadelphia. * * * "

That in each year previous to the year 1875, the defendants paid the said plaintiff the sum of fifty dollars for each of the cars run by them during said year.

The defendants, in the month of January 1875, ran seventy-nine cars on their road, and admit their liability to pay to the plaintiffs, for each car, the sum of thirty dollars, and no more.

If the court shall be of opinion that the plaintiffs are entitled to recover the sum of fifty dollars for each car, then judgment to be entered for the plaintiffs at that rate; if not, then judgment to be entered for the plaintiffs at the rate of thirty dollars for each car. The damages to be assessed by the prothonotary.

It is agreed, that any Act of Assembly or ordinance of the city of Philadelphia which may be pertinent to the case here stated, shall be considered as embraced herein.

The court entered judgment for the plaintiff at the rate of fifty dollars on each car.

The defendants took this writ and the assignments of error were:

1. The court below erred in entering judgment at the rate of $50 each car.

2. The judgment below impairs the obligation of the contract created by the charter of the Union Passenger Railway Company, and is in conflict with sect. 10 of art. 1 of the Constitution of the United States.

3. The court below erred in not entering judgment on the case stated at the rate of $30 each car.

*David W. Sellers* and *F. Carroll Brewster*, for plaintiffs in error.—By the Act of 1864 which gave the defendants their corporate existence the company was made subject to the ordinances of the city of Philadelphia *then* regulating the running of passenger railway cars, and it was provided that the said company should pay such license for each car as " is now paid by other railway companies." Other railway companies were paying $30 per car in accordance with the only ordinance in force on this subject, that of 1859.

The Act of 1867 being passed after the date of defendant's charter and upon which plaintiff bases her right to tax defendants, does not apply to this company.

It is further contended that this law impairs the obligation of the contract created by said charter of the railway company, and is in conflict with sect. 10 of art. 1 of the Constitution of the United States: Dartmouth College v. Woodward, 4 Wheat. 656.

In the contract or charter granted to the company, the state could say nothing about a special tax, or she could stipulate for a particular

[Union Passenger Railway Co. *v.* City of Philadelphia.]

charge.   If the Commonwealth had remained silent, then, of course, the defendants would have become liable to all taxes, then or thereafter to be imposed.   But the state having said in the charter, you shall pay a certain tax on a particular franchise, a contract is made which requires the full and free consent of the two parties thereto, either to make or unmake.   It being clear that the defendants are a party to a contract, made with them by the Commonwealth, the obligations arising from the said contract cannot be impaired without violating the Constitution of the United States.

Neither does the Act of 1868 apply for like reasons.

The power of repeal is not reserved by the state in defendant's charter.

*Robert N. Willson* and *Charles H. T. Collis*, City Solicitor, for defendant in error.—The act of incorporation subjected the company to the duty of paying the same amount which was paid by other similar companies, and this had been fixed by ordinance at the sum named..

This provision of the statute, it is evident, was intended to define precisely what the obligation of the company should be with reference to the payment of the license charge, at the time of its assumption and exercise of the franchises conferred.   The requirement was not intended to be the gift of a right or privilege to the corporation, but the imposition of a duty.   It was not a tax directed to be paid, but a charge in favor of the city in the exercise of her police powers : Frankford & Phila. P. Railway Co. *v.* City, 8 P. F. Smith 119, and Johnson *v.* Philadelphia, 10 Id. 445.   The plain purpose of the act was to bring the new corporation under the same restrictions which were applied to the other passenger railway companies, not to give it an exemption from duties which might be imposed upon them.   Besides, a surrender of the Commonwealth's power over the corporation will not be implied : Erie Railway Co. *v.* Commonwealth, 16 P. F. Smith 84.   The charter itself says the company " shall be subject to the ordinances of the city," &c., thus . subjecting the company to the payment of such increased license fees as should lawfully be imposed thereafter.

At the time the company was incorporated, sect. 26, art. 1, of the Constitution gave to the legislature the power of repeal.   By. reason of the nature of this constitutional provision, it became engrafted into every charter granted while it was in existence, with as much effect as if it had been made in very words a part thereof, and, therefore, it became a part of the charter of the company in question.

The judgment of the Supreme Court was entered, February 12th 1877,

PER CURIAM.—When the case of the Frankford Passenger Rail-

[Union Passenger Railway Co. *v.* City of Philadelphia.]

way Co. *v.* Philadelphia, 8 P. F. Smith 119, was before this court, the power of the city to collect a license-fee was necessarily found in the exercise of the *police* power, and under the provisions of the Act of 15th April 1850, for "the regulation of omnibuses or vehicles in the nature thereof," for the reason that then no express power had been conferred by law to impose a tax directly upon the cars of the company. This power, however, has been supplied by the Act of 11th April 1868, Pamph. L. 849, enacting "that the several passenger railway corporations in the city of Philadelphia shall pay annually to the said city, in the month of January, the sum of fifty dollars, as required by their charters, for each car intended to be run over their roads during the year, and they shall not be obliged to pay any larger sum." Stress is laid on the words "as required by their charters," as if the obligation was to be contained therein, to pay fifty dollars. That this was not the meaning of the law is obvious, for if it were a charter obligation to pay this sum the law would be unnecessary. Its reference was clearly to the duty to pay, not to the sum to be paid. These charters require obedience to the lawful ordinances of the city, under its municipal powers. This is rendered evident by the remainder of the section of the law just quoted, which as a set-off to or consideration for the payment of the fifty dollars tax, took away from the city all power, by ordinance or otherwise, to regulate passenger railways, unless authorized by the *express terms* of laws referring directly to these corporations. It appears that in each year previous to the year 1875, the defendants paid to the city the sum of fifty dollars for each car run during the year. Now as this was not done under protest, or in any other way reserving the right of the company to object to the Act of 1868, it is a legal conclusion that this company accepted of that act in order to obtain the benefit of the legislation that forbade the city from making regulations affecting it unless authorized by a law referring in express terms to these railway corporations. This puts an end to all controversy as to the power of the legislature to pass the Act of 1868. But we are not even disposed to regard that act as unconstitutional. We do not think the terms of the charter which provided for the payment of such a license-fee of thirty dollars as was *then* paid by other passenger railway companies in this city, negatives all right of the Commonwealth to impose the tax of fifty dollars contained in the Act of 1868. The right of the state to impose such a tax, rate, or imposition in future, cannot be taken away by a mere implication arising from a direction to pay a certain sum. To fetter her power to levy moneys for public purposes, it needs a plainer negation of her own power. There might be indications of this intention found in other provisions sufficient with the direction to pay, taken together as a whole, to establish a relinquishment of the power, but this must be plain, when it is sought to establish disability to exercise one of the great functions of government. We

2 Norris—28

[Union Passenger Railway Co. *v.* City of Philadelphia.]

therefore regard the 10th section of the charter as conferring an *authority* only upon the *city* to receive, and imposing an *obligation* on the company to *pay* this sum, but not as a contract on part of the Commonwealth for the relinquishment of her own power to impose a future burthen.

And if this be not so, still we think the amendment to the Constitution of 1857 subordinates charters of incorporation thereafter granted to the power to make alterations therein, provided no injustice be done the corporators. Now, a general law, such as the Act of 1868, which imposed the duty on all these corporations in this city alike, to pay a *reasonable* sum of money as a tax or rate for the use of the city, whose streets are used by these companies in such a manner as to be often detrimental to their use by the citizens, cannot be said to be injurious to the corporators. In the use of the public streets the balance of convenience over inconvenience is undoubtedly in favor of these railways, else they would not be allowed. Nevertheless, there is a counter weight of inconvenience very serious to the citizens in the use of vehicles, the delivery of heavy articles and portage of goods in narrow streets, which must be taken into account, while the profit taken by the stockholders for the use of these railways is often great, and forms a consideration for reasonable burthens.

Upon the whole case, we think the judgment of the court below was right, and must be affirmed.          Judgment affirmed.