Girard Trust Company, Trustee's Appeal.

Argued December 5, 1938; reargued December 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George Wharton Pepper,* of *Pepper, Bodine, Stokes & Schoch,* with him *Frederick H. Spotts* and *Richard Benson,* for appellant.

*Abraham Wernick,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellee.

*Guy K. Bard,* Attorney General, *Edward Shippen Morris* and *E. Russell Shockley,* Deputy Attorneys General, and *John A. M. McCarthy,* for intervenor.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 29, 1938:

In 1911 the General Accident Fire and Life Assurance Corporation, Ltd., a corporation formed under the laws of the United Kingdom and registered to do business in Pennsylvania, executed a written agreement with the Girard Trust Company, as trustee, transferring certain securities and property in trust for the uses and purposes therein set forth. The deposit of these securities in some state in the United States was required under the insurance laws: see Section 601, Act of May 17, 1921, P. L. 682. The settlor-insurance company, under the agreement, retained absolute dominion and control over the fund, its investment, reinvestment and general management, and reserved an unqualified power to revoke the agreement at any time after the expiration of one year from the date thereof. The only circumstances under which the Girard Trust Company will acquire any degree of control are in the event that (1) the insurance company's auditors notify the trustee that the reserve is impaired, (2) the company ceases to do business, or (3) the company fails to satisfy a judgment on a policy claim within a fixed time. None of these contingencies appears to have arisen; the insurance company in fact has at all times exercised absolute control over the fund; and the trustee has merely held custody of the fund, the value of the part involved in these proceedings having been $7,271,908 on the assessment date.

On or about January 20, 1937, the assessors for Philadelphia County made an assessment in this amount for the taxable year 1937 against the Girard Trust Company, as trustee, from which an appeal was taken to the Board of Revision of Taxes. This appeal was dismissed, which action was sustained by the court below in a pro-

ceeding brought under the Act of May 22, 1933, P. L. 853, section 518.

The appeal under consideration requires a very careful analysis of the Personal Property Tax Act of June 17, 1913, P. L. 507, section 1, last amended by the Act of April 21, 1933, P. L. 54, section 1. The first part of this section provides that "all personal property of the classes hereinafter enumerated, owned, held or possessed by any person . . . or company, resident, located, or liable to taxation within this Commonwealth, or . . . by any . . . bank, or corporation . . . liable to taxation . . . . whether such personal property be owned, held, or possessed . . . in his, her, their, or its own right, or as active trustee . . . for the use . . . of any other person . . . company . . . or corporation, —is hereby made taxable annually for county purposes . . . at the rate of four mills. . . ."

These provisions, without more, establish a very broad plane of taxation on personal property, but it is apparent from the succeeding portions of the section that the legislature was endeavoring to lay a four mill tax only on certain species of personal property. When enumerating the various classes of intangible property to be taxed, and providing for definite exemptions, the legislature no doubt had in mind either its legal inability to subject these exempted intangibles to a tax, or that the exempted intangibles had already been taxed in another form for State purposes. In a word, the legislature wished, among other things, to avoid double taxation. There are other exemptions noted which cannot be explained on these two grounds, but rest on other policies.

The types of personal property to be taxed under the Act, or, as the Act reads, "the classes hereinafter enumerated" include: mortgages; all money owing by solvent debtors, such as notes, bonds et cetera; public loans, *except* those issued by the Commonwealth or the United States; all loans issued by any corporation, et cetera, *except* those taxed under Section 17 of the Act; all

shares of stock, *except* shares of stock in any corporation that may be liable to a tax on its shares or capital stock for state purposes, or is relieved from the payment of the tax on its shares or capital stock. Other exemptions follow until we read, *"provided further, That corporations . . . liable to tax on capital stock for State purposes, shall not be required to make any report or pay any further tax, under this section, on the mortgages, bonds, and other securities owned by them in their own right."*

It will be observed that in the Act, as thus stated, the exempted property is related to both classes. Exempted property owned, held or possessed by any person or corporation in its own right is not subject to the four mill tax, and it is equally clear that all such exempted property owned, held or possessed by an individual or a corporation as active trustee for the use, benefit or advantage of another person or corporation, is likewise excluded from the tax.

The clause in Section 1 which seems to give trouble, and the one which it is urged challenges this conclusion, is the following: "but corporations, limited partnerships, and joint stock associations, holding such securities as trustees . . . or in any other manner, shall return and pay the tax imposed by this section upon *all* securities so held by them as in the case of individuals." It should not be doubted at this late date under the practical operation of the Act that a *trust res* in the hands of trustees, consisting of property specifically exempted by the Act, is free from the tax. If we were to hold, however, that the tax is against the *trustee* measured by the gross value of the property in the trust, we would subject all the exempted property to tax; and if we were to hold that the words *"all* securities so held by them" intended to include this exempt property, then, in either case, the words that follow, "as in the case of individuals," would have no place in the Act. If the exempted properties in the hands of individuals would not be

taxed, to include in the gross value of an estate, for tax purposes, the value of the exempted properties simply because they happen to be held by a trustee, would wipe out the clear intent and purpose of the legislature to exempt this *class of property* from tax no matter in whose hands it is held. We conclude, therefore, that the Act intended to exclude such property from the county four mill tax, and that the mere fact that it happens to be held by a trustee in either an active or a passive trust, revocable or irrevocable, should not, and does not, change the status of exempted property included in the trust res.

Since the tax, by the express words of the Act, is imposed only upon *property,* it cannot be construed to be a tax upon the transaction in placing the securities in trust, measured by their value.

Further, to demonstrate that the trustee, as trustee, is not taxed, he must segregate such property, that is separate the exempted property from the nonexempt, make a report of the nonexempt under the Act and pay the tax. This does not cause the tax to be a tax on the trustee, as such; it is a tax on the property in the hands of the trustee.

The trustee is merely the reporting and collecting agency for the municipal government.

The concluding exemption of property of persons and corporations nonresident or not located within the State or doing business here, held in trust by a Pennsylvania trustee, does not mean that all other classes of property held by a trustee should be subjected to the four mill tax. This exemption must be read in connection with all the other exemptions so as to carry out the full intent and purpose of the legislature that all exempted property, no matter how it is held, is excluded from the tax.

Conceding, then, that the clause in question, quoted above, does not include property exempted in the section, our next concern is whether appellant's property is

within any of the classes of exempted property. There are the further questions of whether the legislature intended to include revocable trusts in the class of trusts that are mentioned in the Act, and whether the legislature could include property for tax, the domicile of the real owner being outside of the State and the property here under a deposit or trust that had been ordered and directed by the legislature to be maintained either in this State or some other state. These latter questions, while they are interesting, need not be determined in this opinion. We will concern ourselves only with the question whether or not this property is within any of the exempted classes.

It is apparent that the Act makes two distinct types of property exemption:

(a) Exemption based upon the inherent qualities of the property itself, such as shares issued by a corporation liable to a capital stock tax; Commonwealth and Federal bonds; securities subject to the corporate loans tax, et cetera. This exemption attaches to the property regardless of its ownership.

(b) Exemption which attaches to certain property not because of its inherent qualities, but because of the external fact of ownership. This exemption extends to all property owned by particular taxpayers, such as corporations "liable to tax on capital stock for State purposes."

The mere fact that appellant is a foreign corporation doing business in the State does not exclude it from paying tax on the securities it holds if they are not otherwise exempt, unless an unconstitutional discrimination is effected against it. To bring appellant within any exemption, and exemptions must be strictly construed, it must show that its securities bear a definite and positive relation to the exemption under consideration.

There are two primary considerations in determining whether this property is exempt: First, this foreign corporation pays a gross premium tax for the privilege of

doing business: *Commonwealth v. Equitable Life Assurance Society,* 239 Pa. 288. Though we held in *Miller's Estate,* 330 Pa. 477, that the shares of a foreign insurance corporation were not taxable under the former provision of the State Personal Property Tax Act exempting the shares of any corporation "relieved from the payment of a tax on its shares or capital stock for State purposes," the question was not raised in that case whether such shares would also have been exempt because the foreign insurance corporation paid the equivalent of a capital stock tax. That the gross premiums tax is clearly the equivalent of a capital stock tax within the meaning of the exemption is evident from a consideration of the legislative purpose underlying both the exemptions and the tax on premiums. In *Dupuy v. Johns et al.,* 261 Pa. 40, at 49, it was stated that the purpose of the legislature in enacting the exemption clauses was to divide corporations into two groups: "(1) Those doing no business, making no official reports, and paying no capital stock tax in Pennsylvania, upon the stock of which resident shareholders must pay a tax; (2) Those which are bona fide engaged in business here, report to the auditor general, and are either liable to a state tax on capital stock or relieved therefrom by the laws of the Commonwealth, the stock of which is exempt in the hands of resident shareholders." It was held in that case that the purpose was not solely to prevent double taxation, and that therefore it was immaterial that a foreign corporation paid a tax on but a small portion of the capital represented by its shares. When the capital stock tax on foreign corporations was replaced by the franchise tax, which afforded a fairer basis of taxation, this Court held in *Arrott's Estate,* 322 Pa. 367, that the franchise tax was equivalent to the capital stock tax within the meaning of the personal property tax exemptions. The effect of these decisions is that when a foreign corporation brings itself within the class of corporations doing business within this State, reporting to

the auditor general, and liable to a State tax which is in lieu of or equivalent to a capital stock tax, it brings itself and its shares within the exemptions of the personal property tax Act. While the gross premiums tax is not measured by capital stock value, it has been adopted by the legislature as the fairest way to obtain an equivalent taxation of foreign insurance corporations, and as one which bears a substantial relation to the tax paid by similar domestic corporations. We therefore conclude that the gross premium tax of two per cent is equivalent to the capital stock and premium tax paid by other insurance companies within the spirit and purpose of the exemption provisions.

The only matter requiring further elucidation is whether in applying this Act appellant under the circumstances here related is to be considered the owner of the securities. Under the agreement the Girard Trust Company is acting merely as custodian of the securities. Until one of the specified contingencies occurs, this is virtually a deposit for safekeeping, with appellant exercising complete control and dominion over the securities, including the right to terminate the agreement, and receiving the full benefits thereof. The purpose of this arrangement was to comply with this state's statutory requirement that an insurance company of a foreign nation deposit somewhere in this country a portion of its reserve funds sufficient to cover its outstanding United States liabilities, so that those having just claims against it will not have to look beyond the seas for their satisfaction. Such an arrangement does not create an active trust setting up a fund separate and distinct from the capital assets of the company for a purpose other than that for which they would be used if retained by the company. No one could contend that the reserve funds of an insurance company in its own hands constitute an active trust. In the instant case, the funds held by the Girard Trust Company as a deposit to protect United States creditors and policyholders still are as much a

part of the capital assets of appellant as if they were in their own hands, subject to its complete control and dominion, and are to be considered as owned by it within the meaning of the tax statute. Appellant is therefore exempt from paying a four mill tax on the property it owns.

There is a stronger reason, however, than this for construing appellant relieved of the tax: While appellant may be subjected to the present levy if other companies of like character are so subjected, domestic insurance companies of like character are relieved from the payment of this tax. To require the tax to be paid by foreign insurance companies would not only be a direct violation of the due process and equal protection clauses of Sections 1 and 9 of Article I of our own Constitution (see *Rohrer v. Milk Control Board*, 322 Pa. 257, 259), but would be a positive invasion of the Federal Constitution.

Although a foreign corporation may be subjected to unequal taxation as an admission fee, or condition precedent to its admission to do business within the State *(Hanover Insurance Co. v. Harding*, 272 U. S. 494, at 510, and see *Nugent Funeral Home v. Beamish*, 315 Pa. 345, at 348), *once within the jurisdiction* it may not be arbitrarily and oppressively discriminated against in favor of similar domestic corporations. See *Southern Ry. Co. v. Greene*, 216 U. S. 400; *Air-Way Electric Appliance Corp. v. Day*, 266 U. S. 71; *Quaker City Cab Co. v. Com. of Pennsylvania*, 277 U. S. 389; *Liggett Co. v. Baldrige*, 278 U. S. 105; *Nugent Funeral Home v. Beamish*, 315 Pa. 345, 349. In *Hanover Insurance Co. v. Harding*, 272 U. S. 494, a tax on the full value of net receipts imposed only on foreign corporations, which also paid a two per cent gross premium tax on the privilege of doing business and the same personal property tax as domestic corporations, was held to effect a denial of equal protection, because foreign corporations were required to pay upon the full valuation of receipts,

whereas domestic corporations were required to pay only the personal property tax based upon a reduced valuation. It was urged there that the discrimination was sustainable as an additional condition upon the continuing privilege of the foreign corporation to transact business in the State, but the Court rejected this conclusion, holding that after admission it is "put on a level" with domestic corporations. And it was held that though the tax was held by the state courts to be a privilege tax, it bore no relation to the power of the State to exclude or impose conditions upon foreign corporations seeking to enter.

In *Bethlehem Motors Corporation v. Flynt*, 256 U. S. 421, a license tax on sales by automobile manufacturers was held to be discriminatory and unconstitutional as applied to foreign corporations doing business in the State because the taxing statute permitted a reduction amounting to four-fifths of the tax under conditions which could be met only by domestic corporations. In *Concordia Insurance Co. v. Illinois*, 292 U. S. 535, it was stated that, if it had been shown in that case that a net receipts tax levied on foreign corporations effected discrimination in the tax burden against foreign corporations, it would violate the equal protection clause. In the most recently decided case, *Connecticut General Life Ins. Co. v. Johnson*, 303 U. S. 77, it was said with reference to a tax imposed on reinsurance premiums paid in the home state of foreign insurance corporations admitted to do business: "A corporation which is allowed to come into a state and there carry on its business may claim, as an individual may claim, the protection of the Fourteenth Amendment against the subsequent application to it of state law." In holding the tax a violation of the due process clause, the Court cited with approval the Hanover case.

The reasoning of these cases applied to the present tax clearly shows its unconstitutionality. A foreign insurance corporation pays a two per cent gross premium

tax to the Commonwealth upon the privilege of entry and doing business: *Com. v. Equitable Life Assurance Soc.*, 239 Pa. 288. Once having met this condition, and having undertaken the transaction of business here, the corporation is thereafter entitled to reasonable equality with domestic corporations in the matter of taxation. This does not require *identical* treatment. Substantial equality is the test. As was stated in *Concordia Insurance Co. v. Illinois*, 292 U. S. 535, at 547: "Mathematical equivalence is neither required nor attainable; nor is identity in mere modes of taxation of importance where there is substantial equality in resulting burdens."

The nature of foreign insurance corporations makes a capital stock tax impracticable and the legislature has chosen the gross premiums tax as the best method of equalizing the tax burden of the foreign corporation with that of the domestic insurance corporation. To impose upon a foreign insurance corporation already within the jurisdiction an entirely separate and additional tax, from which domestic insurance corporations are expressly exempt, would be burdening the former with an oppressive and arbitrary disadvantage, not justified by any fundamental difference in the two types of corporations, or in their relations with the State. Such an arbitrary discrimination would clearly violate the equal protection clause. In *Paul's Estate*, 303 Pa. 330, at 335, we said: " 'Taxation is an intensely practical matter and laws in respect to it should be construed and applied with a view of avoiding as far as possible unjust and oppressive consequences,' " citing *Farmers' L. & T. Co. v. Minnesota*, 280 U. S. 204, at 212.

These considerations fortify the construction placed upon the exemption provisions of the Act. The legislature should not be presumed to have intended an unconstitutional and unjust result. For these reasons, this property is not taxable.

It cannot be doubted that if the foreign corporation held this property individually in its strong box it could

not be subjected to the tax. Instead of using its strong box, owner-appellant has here used the Girard Trust Company as a custodian, retaining and exercising complete dominion and control over the securities and enjoying the full benefits thereof. The placing of securities in the hands of a resident trustee or agent for the purposes here present, does not constitute such a change of ownership as would take away the badge of exemption the property bears in the hands of the owner-appellant.

Decree reversed at appellee's cost.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

The majority decision not only exempts the Girard Trust Company from the tax that it paid for over a score of years but it also, in my judgment, opens the door for many other tax exemptions, and because of the importance to this Commonwealth of this decision I deem it my duty to state the reasons why I dissent from it.

The grounds of the majority opinion are, in my judgment, wholly untenable; the chief of these grounds was not even referred to in the oral argument of appellant's counsel. The majority opinion says: "We conclude, therefore, that the Act [of June 17, 1913, P. L. 507, last amended by the Act of April 21, 1933, P. L. 54] intended to exclude such property [i. e., the property held by the Trustee in the instant case] from the county four mill tax, and that the mere fact that it happens to be held by a trustee in either an active or a passive trust, revocable or irrevocable, should not, and does not, change the status of exempted property included in the trust res."

The majority opinion reasoning is (1) that the taxing act provides that "corporations . . . liable to tax on capital stock for state purposes shall not be required to make any report or pay any further tax, under this section, on the . . . securities owned by them in their own right," (2) that the "gross premium tax" paid Pennsylvania by this foreign assurance corporation is "the equivalent of a capital stock tax within the meaning of

personal property tax exemption," and "we therefore
conclude that the gross premium tax of 2% is equivalent
to the capital stock and premium tax paid by other in-
surance companies within the spirit and purpose of the
exemption provisions, and that appellant is therefore re-
lieved or exempt from paying a four mill tax on the
property it now owns.".

The fallacy in this reasoning lies in the assumption
that payment of the tax imposed on the Girard Trust
Company under the taxing statute *is a tax on the foreign
Assurance Corporation for the privilege of doing busi-
ness in Pennsylvania.* It is a fact, as was admitted by
appellant's counsel at the oral argument, that if the As-
surance Corporation did not deposit its securities *in
Pennsylvania,* but did deposit them *anywhere else in the
United States* (whether these securities were taxed or
tax-free in such other state) that corporation could *still
do business* in Pennsylvania. Pennsylvania does not re-
quire the Assurance Corporation to deposit these securi-
ties *in Pennsylvania* in order to do business here. The
corporation for reasons which must have commended
themselves to its officers chose to deposit these securities
in *this* State and it then became this State's duty to pro-
tect that property. The corporation made by successive
agreements dated, respectively, March 27, 1899, May 9,
1907, and August 29, 1911, the Girard Trust Company
its "Trustee of certain moneys, funds and securities, to
be held by said Trustee as a reserve fund for the benefit
of the policyholders of the Corporation under the terms
and conditions set forth in said . . . deed of trust."
The Corporation then "in consideration of $1.00 . . .
doth assign, transfer and set over unto the said Trustee,
its successors and assigns, all the moneys, funds, securi-
ties and real estate enumerated in the schedule attached
hereto" (i. e., to the 1911 indenture). The trustee's du-
ties were, "as to principal, to invest, reinvest and keep
invested said trust funds in such securities or real estate
as the Corporation may from time to time direct either

by a written direction and instruction signed on its behalf by any two of its Directors and by the General Manager or Secretary of its Head Office in Great Britain . . . and to hold the same for the protection of the policyholders of the Corporation in the United States of America, as herein provided; also as to the income, to receive the interest, income, dividends and rents from said securities and real estate, and except as herein otherwise provided, to pay over the same from time to time to the Corporation. . . . The Corporation undertakes and agrees that the fair value of moneys, securities and real estate composing the principal held under this indenture shall never be less than the amount of a reserve fund sufficient to comply with the laws *of the several states* [italics supplied] into which the Corporation may now as in the future be admitted for the transaction of business."

The indenture thus clearly creates a trust in the State of Pennsylvania to enable the corporation to do business in the "several states" of the Union into which it may be admitted to do business. No tax is imposed by Pennsylvania on this foreign corporation for the privilege of doing business here except the gross profits tax referred to in the majority opinion, which tax is imposed on *all* foreign corporations doing business here. This particular foreign corporation, in addition to doing business in Pennsylvania, *creates a trust* and names a trustee here *for its benefit in all the states of the Union.* Our Taxing Act of 1913, P. L. 507, imposes a tax on "all personal property of the classes hereinafter enumerated . . . whether such personal property be owned, held or possessed by such person or persons, . . . or corporations in his, her, their or its own right, or *as active trustee, agent, attorney in fact,* or in any other capacity, *for the use, benefit or advantage of any other person, persons, . . . or corporation.*" (Italics supplied.) That the personal property held for the Assurance Corporation by the Girard Trust Company as either "active trustee,

144

agent, attorney in fact or in any other capacity" is taxable is so clear that no argument can further crystallize it.

The majority opinion states: "a *trust res* in the hands of trustees, consisting of property specifically exempted by the Act, is free from the tax." The apparent implication is that the trust res in controversy consists of tax exempt securities and is therefore "free from the tax" imposed. The answer to this contention is that there is not a particle of evidence in this record that the trust res in question consists of "property specifically exempted by the Act." For all we know the property may consist of bonds of the British government or of cash or of something else. Under the indenture of August 29, 1911, the Assurance Corporation "transfers" to the Girard Trust Company "all moneys, funds, securities and real estate enumerated in the schedule attached" to the indenture. What this property may consist of at the present time nowhere appears in the record, and it would not make the slightest difference if it did appear. The State of Pennsylvania has not the slightest concern with the composition of the subjects of trust property held for a specific legal or business purpose. When any kind of property is delivered to a Pennsylvania trustee for a certain purpose, that property becomes under our law a subject of taxation. If, for example, Pennsylvania taxed the deposits with clerks of the courts, of cash or of securities as *bail,* as Pennsylvania has the power to do, it would not make the slightest difference in the taxability of such deposits whether they consisted of "tax exempt securities" or not. They would not be taxed as securities, *they would be taxed as bail.* Their status as tax exempt securities would merge in their new status. In the instant case the Girard Trust Company is not taxed on "tax exempt securities" held by it; it is taxed on *property* held by it as trustee. Whether the property so held as trustee consists of British bonds or pounds, or American bonds or dollars, is immaterial. The thing

so held for a specific business and legal function constitutes "property," and that is all that is required to make it under our law taxable in the hands of the trustee.

For this court to hold that the legislature when it imposed a gross premium tax on foreign corporations doing business here, "intended" to exempt from taxation "personal property" deposited by such a corporation with Pennsylvania trustees (though such a deposit *here* was voluntary), is, in my judgment, an act of *judicial legislation.* The "judicial power" with which courts are clothed does not include the power to speculate on what the legislature intended when it enacted a law in plain and unambiguous language, and then to alter that law by attaching that imagined intention to it. It is elementary in this and every other American jurisdiction, as scores of citations in the digests show, and as this court said in *F.-K. Market House Co., Inc., v. Reading,* 310 Pa. 493, 165 A. 398, and reiterated in *Reitz v. Sinking Fund Commission,* 315 Pa. 87, 172 A. 292, that " 'the intention and meaning of the legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, . . . *the statute must be given its plain and obvious meaning.' "* (Italics supplied.)

The tax in question is not a duplicate tax and, even if it were, that fact would not make it illegal. "Appellant's Supplemental Memorandum" states: "It was conceded in oral argument, and the concession is now again made, that the mere fact of double taxation of itself gives rise to no question of legality." It is well recognized that a piece of property may owe such a dual economic allegiance to two different sovereignties as to be properly taxable in both. This court has upheld the validity of double taxation even in the same state. It held in *Provident Life & Trust Co. v. McCaughn,* 245 Pa. 370, 382,

91 A. 672, that "double taxation . . . within proper limitations, is not unknown to our law or beyond the power of the Legislature to impose." Justice STONE of the Supreme Court of the United States in his concurring opinion in *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S. 204, said: "Hitherto the fact that taxation is 'double' has not been deemed to affect its constitutionality and there are, I think, too many situations in which a single economic interest may have such legal relationships with different taxing jurisdictions as to justify its taxation in both, to admit of our laying down any constitutional principle broadly prohibiting taxation merely because it is double, at least until that characterization is more precisely defined."

The majority opinion states: "There is a stronger reason, however, than this for construing appellant relieved of the tax: While appellant may be subjected to the present levy if other companies of like character are so subjected, domestic insurance companies of like character are relieved from the payment of this tax. To require the tax to be paid by foreign insurance companies would not only be a direct violation of the due process and equal protection clauses of Sections 1 and 9 of Article I of our own Constitution (see *Rohrer v. Milk Control Board,* 322 Pa. 257, 259, [186 A. 336] ), but would be a positive invasion of the Federal Constitution." The basic error in that statement is in the clause: "domestic insurance companies of like character are relieved from the payment of this tax." The tax complained of is not a tax imposed on *any* insurance company; it is a tax imposed on *personal property* held by the *Girard Trust Company.* If any *domestic* corporation assigned to the same or any other trustee certain of its moneys and securities for any purpose beneficial to it (let us say, for example, to enable it to do business in other states or in Canada), it could not complain that its trustee was taxed on the securities or money so held by it. Having sent its securities to a Pennsylvania trustee and relying

on Pennsylvania to protect those securities as it protects all other property within its borders, it would have no legal cause for complaint when Pennsylvania taxed that personal property as it taxed all other such personal property within its jurisdiction. "Legal protection and taxation are reciprocal," said this court in *Com. v. Am. Dredging Co.*, 122 Pa. 386, 391, 15 A. 443. Since the Assurance Corporation voluntarily exercises the privilege accorded it of depositing certain property in Pennsylvania so that it may do an insurance business in the several states of the Union, it is only reasonable and just that the corporation should compensate this Commonwealth for the privilege so exercised. If an American citizen deposited either with a trustee or in a safe deposit box in Great Britain certain cash or securities owned by him, he could have no cause for complaint if the British government taxed him something for the protection it accorded his property. The powers to tax and the duty to protect are correlative. Even a mere custodian of property is entitled to be compensated for his custody.

That the property taxed is personal property held by the Girard Trust Company "as Trustee" for the use, benefit or advantage of another is self-evident. The indenture by which the Girard Trust Company secured possession of this property falls precisely within the description of a trust agreement approved by this court in *Cumberland Co. v. Lemoyne Trust Co.*, 318 Pa. 85, 95, 178 A. 32: "Any agreement or contract, in writing made by a person having the power of disposal over property, whereby such person agrees or directs that particular property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, raises a trust in favor of such other person against the person making it: Perry on Trusts, page 79; *Cressman's App.*, 42 Pa. 147; *McAuley's Est.*, 184 Pa. 124 [39 A. 21]; *Eshbach's Est.*, 197 Pa. 162 [46 A. 1032]; *Ranney v. Byers*, 219 Pa. 332 [68 A. 971]." That the property in

question is taxable under our Taxing Act of 1913, as amended by the Acts of 1929 and 1933, is manifest to me, as it was to the court below, which declared: "Since the trust company holds these securities for the benefit or advantage of the policyholders, it is a trustee with duties to perform, and therefore the securities held by it in trust for the benefit of such policyholders are subject to the tax as provided for in the Act."

The majority opinion also holds that the tax as applied to the property referred to is in conflict with the due process clause of the Federal Constitution. This is the argument stressed by appellant and on which apparently reliance is placed. In appellant's paper book appears, inter alia, the following: "The securities are intangible personal property. . . . Such property is taxable only at the domicil of the owner," (meaning in this case in Scotland). I think the latter quoted sentence is too sweeping to be judicially acceptable. It is based largely, if not exclusively, on decisions of the United States Supreme Court and of this court in cases involving the assessment of an *inheritance* tax, not on the assessment of *property* taxes. Cooley on Taxation, 4th ed., Vol. 1, sec. 48, says: "An inheritance tax . . . is, in its common form, an excise on the privilege of taking property by will or by inheritance or by succession in any other form upon the death of the owner. . . . They are indirect rather than direct taxes, and are in the nature of an excise tax rather than a property tax," citing, inter alia, *Knowlton v. Moore,* 178 U. S. 41, and *Finnen's Est.,* 196 Pa. 72, 46 A. 269. Cooley also says in the same section: "Laws imposing inheritance taxes are 'based upon two principles: 1. An inheritance tax is not one upon the property but on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it.' "

Since an inheritance tax is not one on the property but on the *succession,* the reason for the rule that a state tax on the succession to intangible personal property can be imposed only by the State in which the owner was a resident at the time of his death is based on obviously practicable considerations. As the Supreme Court of the United States said in *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S. 204, 212, "Taxation is an intensely practical matter." Since a decedent's intangible personal property may be actually in different jurisdictions but since in the majority of instances most of that property has its situs where he has his domicile, the practical rule is to assess inheritance taxes on intangible property at the owner's domicile. A leading case on this subject is *Farmers Loan & Trust Co. v. Minnesota* (supra). In that case the decedent resided in New York and at the time of his death and long previously thereto he had owned and kept within that state negotiable bonds and certificates of indebtedness issued by Minnesota and certain cities in that state. The Supreme Court, after pointing out that none of these securities "had any connection with business carried on by or for decedent in Minnesota," held that Minnesota could not legally assess "an inheritance tax upon the same testamentary transfer." The Supreme Court, however, declared in that case that "choses in action may acquire a situs for taxation other than at the domicile of their owner if they have become integral parts of some local business" (citing *New Orleans v. Stempel,* 175 U. S. 309; *Liverpool & L. & G. Ins. Co. v. Orleans Assessors,* 221 U. S. 346, and *Bristol v. Washington County,* 177 U. S. 133). The United States Supreme Court in recent decisions has given clear recognition of the fact that intangible personal property may be localized for purposes of taxation in a state other than the owner's domicile. In *Wheeling Steel Corp. v. Fox, State Tax Comr.,* 298 U. S. 193, the United States Supreme Court held that West Virginia had the right to tax bank deposits made in that state by a Delaware Cor-

poration. The language of Chief Justice Hughes' opinion, speaking for the court in that case, is as follows: "Our conclusion is that appellant has failed to show that West Virginia in laying the tax [on the Delaware corporation's bank deposits and accounts receivable in West Virginia] has transcended the limits of its jurisdiction and thus deprived appellant of its property without due process of law." The court said further: "The decision in the instant case, . . . is . . . that the statutes require taxation in West Virginia . . . *only of such intangibles as upon the facts and the law, according to the course of business, may be deemed to be within the jurisdiction of the State.*" (Italics supplied.) This was an emphatic recognition of the right of a state to tax *intangibles* which according to the course of business are *within the jurisdiction of the taxing state.* In the light of this recent decision of the United States Supreme Court, it is incomprehensible to the writer of this opinion how the tax Pennsylvania imposes on the intangibles held "according to the course of business" by the Girard Trust Company as trustee and within the confines of this State is in conflict with the due process clause of the 14th Amendment as the Supreme Court of the United States interprets it.

In *Safe Deposit & Trust Co. v. Va.*, 280 U. S. 83, the United States Supreme Court upheld the validity of a tax imposed by the State of Maryland upon stocks and bonds held by a Maryland trustee for a resident of Virginia. The Maryland statute imposed a personal property tax on property "held in trust for the benefit of another." In that case the Supreme Court said: "Manifestly, the securities are subject to taxation in Maryland where they are in the actual possession of the Trust Company—holder of the legal title. . . . : *De Caney v. Lederer,* 250 U. S. 376, 382." In that case the court said further: "Ordinarily this Court recognizes that the fiction of *mobilia sequuntur personam* may be applied in order to determine the situs of intangible personal prop-

erty for taxation: *Blodgett v. Silberman,* 277 U. S. 1. But the general rule must yield to established fact of legal ownership, actual presence and control elsewhere, and ought not to be applied if so to do would result in inescapable and patent injustice, whether through double taxation or otherwise: *State Board of Assessors v. Comptoir National d'Escompte,* 191 U. S. 388, 404." Appellant attempts to distinguish this case from the instant case because the trust was made irrevocable by the settlor's death. The donor reserved to himself power of revocation but, without exercising it, died in 1920. I fail to see how the irrevocability of the trust affected its taxability in the slightest degree. The Supreme Court upheld the right of Maryland to tax these securities, saying "that they are property within Maryland is not questioned." It appears to me that that was the pivotal fact in the case, to wit, that the property was localized in Maryland. In the instant case the trust *was* revocable, but the important point is that *until the trust was revoked, the property was localized in Pennsylvania.* That the trust may be revoked *next* year and the property therefore be no longer localized in Pennsylvania does not affect the power of Pennsylvania to tax the *currently localized* property *this* year.

Appellant in its argument, both oral and written, laid great emphasis on the decision in *Lines's Estate,* 155 Pa. 378, 26 A. 728. That case is so clearly distinguishable from the instant case that it should be regarded as of no controlling influence here. In the first place, the tax complained of in that case was a tax on an *inheritance;* here it is a tax on *property.* The courts, as hereinbefore pointed out, have uniformly held that a tax on the transfer of a decedent's estate should be imposed only by the state of the owner's domicile. Both the logical and practical reasons for this are apparent. The transfer of intangible personal property is in law actually made in the state of the decedent's domicile and it is manifestly appropriate that the transfer tax should

be imposed there. In *Lines's Estate* this court, in upholding the assessment of an inheritance tax by Pennsylvania on all of Lines's property, said: "The manifest purpose of our collateral inheritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, because it is still substantially the property of the grantor, and does not actually pass, nor is it intended to pass to the collateral beneficiaries until his death, and hence it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner." However, in the opinion in that case, this court, quoting from *Orcutt's Appeal,* 97 Pa. 179, recognized the fact that "for particular purposes some species of personalty may have a situs, distinct from the legal one." In Orcutt's Appeal this court, in justifying the assessing of an inheritance tax on all the personal property owned by a decedent resident in Pennsylvania, said: "The [inheritance] tax does not attach to the very articles of property of which the deceased died possessed. It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net succession to the beneficiaries and not on the securities in which the estate of the decedent was invested: *Commonwealth's Appeal,* 10 Casey 204; *Strode v. Commonwealth,* 2 P. F. Smith 181."

*Lines's Estate* is further distinguished from the instant case by the fact that in that case, though the New York Trust Company which had custody of certain of Lines's stocks and bonds had "legal title to the securities," the securities were, as this court pointed out, "the personal property of Mr. Lines. They were his to enjoy during his lifetime." "The naked legal title acquired by the grantee" was described by this court as "the merest shadow." In the instant case the personal property of the Assurance Corporation deposited by it with the Girard Trust Company was decidedly not "its to en-

joy" as long as it wished to qualify to carry on business in the United States, unless it chose to substitute for the personal property so deposited other personal property of equal value. Furthermore, the indenture of trust between the appellant and the Assurance Corporation did not create a "naked legal title" of the "merest shadow." This indenture of trust was created by a mandate of law as a prerequisite to the doing of business by the corporation in this country (see Act of May 17, 1921, P. L. 682, art. VI, sec. 601, 40 PS 721), and "for the protection of the policyholders of the" Assurance Corporation "in the United States of America," and as "a reserve fund sufficient to comply with the laws of the several states into which the corporation may now or in the future be admitted for the transaction of business." The situs of these securities was fixed *in this Commonwealth* by the *voluntary* act of the Assurance Corporation and for its benefit. These securities are in this State for a particular purpose. They are actually "working" here, i. e., performing a definite and important legal function in the interest of this Scotch Assurance Corporation. Our laws require their deposit *in some state*. Their actual situs is the state selected by the Assurance Corporation. That state happens to be Pennsylvania. Judge RICE in *Singer v. Guarantee Trust Co.*, 24 Pa. Superior Ct. 270, 274, cites *Small's Est.*, 151 Pa. 1, 25 A. 23, and quoting from *Hoyt v. Comrs. of Taxes*, 23 N. Y. 224, said: " 'The fiction or maxim, *mobilia personam sequuntur*, is by no means of universal application. Like other fictions, it has special uses. It may be resorted to when convenience and justice requires. In other circumstances, the truth and not the fiction affords, as it plainly ought to afford, the rule of action.' " In this case we have the "other circumstances" in which "the truth and not the fiction affords, as it plainly ought to afford, the rule of action."

The *Countess de Noailles' Est.*, 236 Pa. 213, 84 A. 665, is another case cited by appellant. That was also a case

of the assessment of a collateral inheritance tax. In this court's opinion in that case, a contrast is drawn between inheritance tax cases where the intangible personal property is held to be assessable at the domicile of the decedent and cases where the personal property of a decedent had an "actual situs in this state." Reference was particularly made in Justice BROWN'S opinion in that case to the decision of this court in *Small's Est.*, 151 Pa. 1, 25 A. 23. In this last named case this court said: "The general question presented is whether the interest in said partnership association [of York County, Pennsylvania] held by the testator [a resident of *Maryland*] at the time of his decease, viz., 150 shares capital stock valued at $150,000, or any part thereof, was subject to the payment of collateral inheritance tax under the laws of this state?" This court held it was taxable here and quoted with approval the following from *Hoyt v. Comrs.*, 23 N. Y. 224, 228: " 'I can think of no more just and appropriate exercise of the sovereignty of a State or nation over property, situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law.' 'A nation within whose territory any personal property is actually situated, has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there': Story's Confl. of Laws, sec. 550." This court in *Small's Est.*, supra, in discussing *Orcutt's Appeal*, 97 Pa. 179, referred to the "well defined exceptions" to the rule that personal property follows the domicile of the owner, as follows: "When used in carrying on business and *for other particular purposes* [italics supplied], some species of personal property may have an actual situs distinct from the legal one." Certainly in the instant case the securities of the Assurance Corporation are used in this state for the corporation's "particular purpose" and therefore their actual taxable situs is in Pennsylvania. Since the decisions in *Lines's Est.*, and the *Countess de Noailles' Est.*, relate only to

an *inheritance* tax and not to taxes on personal property localized for a particular business purpose (as is the property in the instant case), I find no warrant for appellant's statement: "If then these cases [meaning the two just referred to] are not to be overruled, the judgment of the court below is erroneous."

My investigations lead me to the belief that the decision of the court below is in complete harmony with the decisions of the courts of other states where the same question has arisen on facts substantially identical in legal import with the facts in the instant case. In *Catlin v. Hull*, 21 Vt. 152, one Hammond, a resident of New York, who owned a large number of promissory notes against residents of the town of Orwell, in Vermont, placed these notes in the hands of a resident of Orwell as his agent. The agent was to manage the business of collecting and reloaning interest and principal on behalf of the owner. A tax was imposed upon the notes. It was argued that the tax was invalid on the ground that the debts being personal property had no situs, apart from the domicile of the owner. The court, however, held that where the property in fact was, the law had power to tax it. In *Adams v. Colonial & U. S. Mortgage Co.*, 82 Miss. 263, 34 So. 482, the Supreme Court of that state held: "Wherever the money of a lender in one state is by the principal intrusted to the control of an agent in another state for the purpose of being kept in the latter state, and loaned out, collected, and reloaned, or habitually kept on deposit, for safety merely, . . . so as thus to remain, through a course of dealing, so long as to become localized as a part of the whole mass of personal property in the latter state, such money acquires what is known as a 'business situs' for the purpose of taxation." In *Metropolitan Life Ins. Co. v. New Orleans*, 205 U. S. 395, the Supreme Court of the United States held that where a nonresident enters into the business of loaning money within a state and employs a local agent to conduct the business, the state may tax

the capital employed precisely as it taxes the capital of its own citizens, in like situation, and may assess the credits arising out of the business, and the foreigner cannot escape taxation upon his capital by temporarily removing from the state the evidences of credits which, under such circumstances, have a taxable situs in the state of their origin. In that case the Supreme Court quoted with approval the following from *New Orleans v. Stempel,* 175 U. S. 309: "Persons are not permitted to avail themselves, for their own benefit, of the laws of a state in the conduct of business within its limits, and then to escape their due contribution to the public need, through action of this sort [sending notes out of the state], whether taken for convenience or by design." In *Comptoir Nat. d'Escompte de Paris v. Board of Assessors,* 52 La. Ann. 1319, 27 So. 801, it was held by the Supreme Court of Louisiana that nonnegotiable notes representing loans in Louisiana made by the agent of a corporation doing business therein, when kept within the state by the agent, may be subjected to taxation by the law of the state in which they are held. The validity of this tax was upheld by the Supreme Court of the United States in 191 U. S. 388. In *Walker et al. v. Jack,* 88 Fed. 576, it was held by the Circuit Court of Appeals, Sixth Circuit, that it is within the power of a state to tax money and credits of a nonresident when the money is invested, the debt contracted, and the investment controlled by a resident agent of the owner, having the evidences of the debt in his possession. In that case Circuit Judge TAFT, after quoting the general rule that the situs of personal property is that of the owner, said, speaking for the court: "Certain exceptions to this rule are recognized. One is where the chose in action is represented by a negotiable bond, property in which passes by delivery. In such a case the evidence of title is in such form, and is so important an element of the value of what it represents as to make it closely analogous to tangible property, and to give it a situs for taxation

where the negotiable evidence of its existence actually is, even though the owner may live elsewhere. This exception is commented on by Mr. Justice FIELD in delivering the opinion of the court in the case of *State Tax on Foreign-held Bonds* [15 Wall. 300]. Another exception is where, though the beneficial interest in the debt is owned by a nonresident, yet the money is invested, the debt is contracted, and the investment is controlled, by a resident agent of the owner. In such a case it is held that the money and the credit in which it is invested are within the state, where the agent receives the money for his principal, and makes the loan, having authority to collect it and to reinvest it: *Finch v. York Co.,* 19 Neb. 50, 26 N. W. 589; *Billinghurst v. Spink Co.,* 5 S. D. 84, 58 N. W. 272; *In re Jefferson,* 35 Minn. 215, 28 N. W. 256; *Redmond v. Commissioners,* 87 N. C. 122; *People v. Trustees of Village of Ogdensburg,* 48 N. Y. 390; *Catlin v. Hull,* 21 Vt. 152; *People v. Smith,* 88 N. Y. 576; *Hutchinson v. Board,* 66 Iowa 35, 23 N. W. 249; *People v. Davis,* 112 Ill. 272; *People v. Ins. Co.,* 29 Cal. 534; *Herron v. Keeran,* 59 Ind. 472. In such cases the circumstance that the agent has in his possession the evidence of the indebtedness is regarded as of importance." Many other cases from various jurisdictions could be cited in support of the principle that when intangible personal property is actually localized in a state, as the Assurance Corporation's property is localized in Pennsylvania, it is subject to a tax by the sovereignty in which it has its actual physical situs.

Appellant emphasizes the fact that no default has been made by the Assurance Corporation in the payment of any claims arising under its policies issued in the United States and that therefore none of the fund deposited with appellant has been drawn upon to pay any judgment arising from such claims. To contend that because the property actually placed in Pennsylvania for a definite business purpose, to wit, to enable this foreign Assurance Corporation to issue policies of insurance in

the United States, has not actually been drawn upon to pay claims and that therefore it has performed no function here and has no "business situs" here is as unsound as it would be to contend that a battleship stationed at some strategic point in time of war for a military purpose performed no function in that war because it was never called upon to engage the enemy in actual battle. The property the Assurance Corporation localized in Philadelphia has been performing an important business function there ever since it was so localized. If it had not been there or somewhere else in the United States, the Assurance Corporation would not have dared to write a single insurance policy "in most of the States" of the Union. Appellant says in its paper book: "The laws of most of the States and of Pennsylvania require that such a foreign insurance company shall maintain a deposit somewhere in the United States in an amount equal at least to that required of local companies. See Act of May 17, 1921, P. L. 682, sec. 601; 40 PS sec. 721. There is no requirement that the deposit shall be maintained in any particular state. It is sufficient as long as it is in one of the United States." That this property may, in case of the foreign corporation's default in the payment of any claim under its policies, be called upon to perform *additional business functions* does not alter the fact that it *has been performing here important business functions from the very day it was deposited in Pennsylvania.*

In appellant's "Supplemental Memorandum" the proposition is advanced that the tax in question amounts to "a denial of the equal protection of the laws" because it "discriminates unfairly against a foreign corporation and in favor of its [Pennsylvania's] domestic competitors" since "the former has paid the tax which is the price of its right to do business in this Commonwealth." I think that argument is fully answered by pointing out that the tax assessed against the Girard Trust Company is *not* a price exacted of the foreign Assurance Corpora-

tion for "the right to do business in this Commonwealth." The Assurance Corporation can deposit the securities in question *anywhere else in the United States* and thus relieve that property of the *Pennsylvania* tax it complains of. There may be states where such property in the hands of a trustee would not be taxable at all; I believe that appellant's counsel so intimated in his oral argument. With that situation in other states, Pennsylvania would have no concern. Pennsylvania simply declares that all personal property in the hands of Pennsylvania trustees or agents or attorneys in fact *shall be taxed*. The Assurance Corporation placed a portion of its personal property, for the corporation's own benefit, in the hands of a *Pennsylvania* trustee; the property is actually *here* and performing a function *here* which is useful to the Assurance Corporation all over the United States and which therefore increases the profits of the corporation at its corporate situs in Scotland. It follows that the property is therefore taxable exactly as would be the personal property of any other foreign citizen who might for his own good reasons establish a trust in Pennsylvania. The property is not taxed because the foreign Assurance Corporation is doing business in this state; it would be taxed exactly the same *if that corporation never did business here and never proposed to do business here*. This foreign Assurance Corporation, having paid a tax or fee for the privilege of doing an insurance business in Pennsylvania, cannot justly or legally claim that that fee also entitles it to send any part or all of its personal property to a trustee in Pennsylvania, there to be protected by this Commonwealth, without any further compensation to this State by way of taxes on property which clearly comes within the description of taxable personal property in this State's taxing statute. Since Pennsylvania is according the corporation's property a protection which *otherwise* Great Britain or some American state other than Pennsylvania would be called upon to accord it, I can see no reason whatsoever

why this State should exempt this property from taxation and I can find no Pennsylvania statute which makes any attempt so to exempt it.

There are sound principles so long established as to be no longer challengeable and which when applied to the present case support the conclusion reached by the court below in its able and well reasoned opinion. These principles are as follows:

(1) The power of every American State to tax all property, real or personal, within its jurisdiction, unless restrained by the Federal Constitution, is unquestioned: *Kirtland v. Hotchkiss,* 100 U. S. 491. See also *M'Culloch v. Maryland,* 4 Wheat. 316, 428.

(2) The Federal Constitution does not restrain any state from imposing a tax on intangible personal property which is performing a business function in that state and has an actual physical situs there.

(3) Whether that personal property is cash or bonds or other evidence of debt or promises to pay is immaterial. "Wealth in a commercial age is made up largely of promises": Pound's "Introduction to the Philosophy of Law," p. 236.

(4) The rule (to which there are a few exceptions) that a tax on the inheritance of intangible personal property can be imposed only by the state where the decedent had his domicile does not affect the right of a state to impose a *property tax on intangible personal property used for a business purpose in that state and having an actual physical situs there.* See *Metropolitan Life Ins. Co. v. New Orleans,* supra, and other cases cited.

(5) A subject which is clearly within the terms of a taxing act should not escape taxation when the law contains no provision for that subject's exemption. (Appellant in its paper book, page 30, concedes that the "property held in trust comes within the all-inclusive language of the personal property tax act" but claims that this "is of no significance.")

(6) "Where the taxpayer or his property is within the general language of the statute imposing the tax, all ex-

emption provisions are to be strictly construed against the claim for exemption." (This excerpt is from Justice SIMPSON's concurring opinion in *Callery's Appeal*, 272 Pa. 255, 272, 116 A. 222, and as a legal principle it is nowhere challenged. "Exemptions [from taxes] are not pampered favorites of the courts," says Cooley in "The Law of Taxation," 4th ed., sec. 704. The same author says in section 672: "Since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it," citing, inter alia, *Henderson Bridge Co. v. City of Henderson*, 173 U. S. 592, and *Union Passenger R. Co. v. Philadelphia*, 83 Pa. 429.)

Appellant does not attempt to point, nor does the majority opinion point, to a single provision in our State's taxing statute exempting the personal property in question from the operation of its provisions. The majority opinion, in order to award an exemption in this case, conjectures a legislative intention to make such an exemption when the legislature enacted a law requiring foreign corporations to pay a gross premium tax. It is clear to me not only that no such conjecture of a legislative intent is warranted but also that courts are not clothed with power to give effect to such conjectures when applying plain and unambiguous statutes. That the Pennsylvania statute specifying the subjects of our State personal property tax is *"plain and unambiguous,"* no one denies.

Since the property assessed is obviously within the taxing statute, since no provision exempting it can be found in our laws, since it contravenes no provision of the State or Federal Constitution, and since it is manifestly just that these millions of dollars worth of securities sent here from abroad to be protected by this Commonwealth should bear in the present, as they have

borne in the past, a fair share of this State's tax bur-
dens, I would affirm the judgment of the court below.

DISSENTING OPINION BY MR. JUSTICE LINN:

The assessed securities are held in an active trust ad-
ministered by a trustee whose principal place of busi-
ness is in Philadelphia County; they are within the
words of the taxing statute and are held for the benefit
of policyholders in this and other states. Discrimina-
tion between domestic and foreign insurance companies
is not involved, for, assuming that the securities would
have been exempt if retained by the owning company,
domestic or foreign, and not placed in the trust, the leg-
islature had the power to tax such securities when
placed in the trust. I would affirm the judgment.

Mr. Justice DREW concurs in this opinion.